## Investors Realty Company, Appellant, *v.* City of Harrisburg.

*Municipalities — Streets — Paving — Assessments — Refunding money erroneously paid—Act of July 5, 1917, P. L. 682—Interpretation.*

Where the language of an act of assembly authorizing the refunding of assessments for paving, which have been held by a competent court to be invalid, is permissive in form, it is in fact peremptory, whenever the public interest or individual rights call for its exercise.

What the public authorities are empowered to do for a third person, the law requires shall be done. The power is not given for their benefit, but for his. It is given as a remedy for those who are entitled to invoke its aid and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which is the test, is not to devolve a mere discretion, but to impose a positive and absolute duty.

In an action to recover the amount of an assessment for street paving, erroneously paid, a verdict for the plaintiff will be sustained where it appeared that the property of the plaintiff was assessed for the cost of paving the full width of the street, and it subsequently was established that it was only assessible for the cost of paving one-half the width.

LINN, J., dissents, PORTER and TREXLER, JJ., concurring.

Reargued March 14, 1923. Appeal, No. 11, March T., 1922, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1920, No. 77, in favor of defendant non obstante veredicto, in the case of Investors Realty Company v. City of Harrisburg. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover a portion of an assessment for paving and curbing under the provisions of the Act of July 5, 1917, P. L. 682. Before WICKERSHAM, J.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $564.06. Subsequently, on motion, the court entered judgment in favor of defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the judgment of the court, quoting it.

*George R. Barnett,* and with him *John H. Alricks,* for appellant.—The payment of the assessment was made under a mutual mistake. The city was bound to refund what it had no right to retain, and while the language of the Act of July 5, 1917, P. L. 682, is permissive in form it is mandatory in fact: McCully v. McCrary, 269 Pa. 585; Union Trust Company of New York v. Gilpin, 235 Pa. 530; Northrop v. Graves, 19 Conn. 548; Kunkel et al. v. Kunkel, 267 Pa. 168; Steinhauer v. Witman, 1 S. & R. 449.

*John R. Geyer,* for appellee, cited: McCrickart v. The City of Pittsburgh, 88 Pa. 133; Shenango Furnace Company v. Fairfield Township, 229 Pa. 357.

OPINION BY HENDERSON, J., October 5, 1923:

The plaintiff's action was brought to recover the amount paid by it to the city on a municipal lien for

street paving in excess of the amount which the municipality was authorized to charge against the plaintiff's property. The assessment was made February 6, 1914. On March 10th, the plaintiff paid to the city 10% of the amount, and on July 10th of the same year a lien was filed to secure the balance of the assessment. In the following November, the plaintiff, having entered into a contract for the sale of the property free of liens, paid the amount of the municipal charge to enable it to execute the conveyance according to the terms of the contract. On the opposite side of the street from the plaintiff's property was a public park and the question having arisen as to the liability of the property fronting on the street opposite the park to a charge for the whole of the cost of the improvement, in an action brought in the Court of Common Pleas of Dauphin County it was decided on April 22, 1916, that the city was liable for the cost of paving and curbing the western half of the street opposite the property located on the east side of the street between Maclay and Division streets. The decision was based on the finding by the trial judge that the ordinance authorizing the improvement only charged the abutting property owners with one-half of the cost of the paving in front of their respective properties—the other half being assumed by the city, for the payment of which provision was made in the ordinance for the sale of municipal bonds. The effect of this decision was that the plaintiff's property was only subject to a charge for the cost of one-half of the pavement in front of its lot. The judgment in this case went against the plaintiff on the ground that its payment of the lien was voluntary; that no duress or restraint was exercised; and that there was no protest of the amount due. The trial judge considered the decisions in Shenango F. Co. v. Fairfield Twp., 229 Pa. 357, and De la Cuesta v. Insurance Co., 136 Pa. 62, decisive of the question. On the facts disclosed by the evidence it is not clear however that the case rests on the doctrine of voluntary payment. It

is true that the lien as recorded was discharged by the plaintiff for the amount appearing to be due, but it would seem that it must have been entered inadvertently for the amount charged therein; as the ordinance authorizing the improvement leaves no room for doubt that the charge against the abutting properties was only to be one-half of the cost of the whole improvement on the street. There is support for the argument therefore that there was a mutual mistake of fact as to the terms of the ordinance in which case an action would lie to recover the amount paid in excess of the lawful charge. A discussion of the subject may be found in 2 Pomeroy's Equity, 2d ed., section 849, and the cases there cited. If the municipal authorities and the plaintiff acted on the mistaken supposition that the charge was properly entered for the whole cost of the improvement in front of the plaintiff's property when the fact was otherwise, that could properly be said to be a mistake of fact and not a mistake of any legal principle or rule of law. Passing that question, however, we are brought to a consideration of the effect of the Act of July 5, 1917, P. L. 682, on which the plaintiff relies to sustain the action. This statute is entitled an act authorizing cities to refund money paid by property owners into their treasuries when a court of competent jurisdiction shall have determined that there was no liability for such payment when made. It is provided in the first section that whenever any city within this Commonwealth shall have, under existing laws, paved, curbed and guttered, or otherwise improved its highways, or any of them......at the expense in whole or in part of the owners of property bounding and abutting thereon, and such owners or any number of them shall have paid the assessments levied against them by such cities or by viewers for such improvement into the respective treasury, the said cities are hereby authorized and empowered to refund to the said owners of property, or their heirs or assigns, the amount of the assessment thus paid by them, if it shall have been decided in any proceeding at

law or in equity by a court of competent jurisdiction that
the owners of property bounding or abutting on said
highway or highways were not liable for the payment of
such improvement at the time it was ordered by the coun-
cil of said cities to be made.   The purpose of this statute
is manifest.   The legislature seems to have had in view
the decisions with respect to the voluntary payment of
municipal claims and undertook by this legislation to
give a remedy to the person so unlawfully charged.   As
charges of this kind have not the quality of a contract
and are not infrequently imposed against the will of the
property owners and the amount paid is not the result of
a compromise of a disputed claim, the purpose of the
statute is commendable in permitting the municipality
to correct a mistake either of fact or law, and unless there
is an insurmountable obstacle, that purpose should be
given effect.   To give it effect in this case is but per-
mitting the city to carry out the provisions of its own
ordinance.   That the payment was made as claimed by
the plaintiff, and that by a proceeding at law in the Court
of Common Pleas of Dauphin County, a court of com-
petent jurisdiction, it was decided that the city was only
entitled to collect one-half the cost of the improvement
from the property on the east side of the street, is con-
ceded.   Nor is it disputed that provision was made by the
city for a fund with which to pay the share of the cost
chargeable to the municipality under the terms of the
ordinance.   Nor can it be controverted that a munici-
pality can only impose a valid municipal lien for street im-
provements when they are made in pursuance of law and
the mode pointed out by the city ordinance is strictly fol-
lowed: Scranton Sewer, 213 Pa. 4.   It is not the case of a
payment of tax for general municipal administration on
the strength of which municipal plans were based, for the
claim against the defendant was not a tax in that sense.
It was a specific charge for a specific improvement.   The
amount paid was appropriated by law to the discharge of
the claim against the land.   Such a fund is not available

for general municipal expenses. Nor is the claim a derangement of municipal finances where provision has otherwise been made for the discharge of the liability imposed on the city in completing the work. There was a moral obligation to refund that part of the defendant's money which was unwarrantably collected, and the councils of a municipality may recognize a moral obligation as a good consideration for the payment of public money: Bailey v. Phila., 167 Pa. 569. In Wolfe v. Edgewood Boro., 58 Pa. Superior Ct. 38, an action was sustained where a municipal claim appeared to be due on an assessment made which assessment was afterward reduced on an appeal by some of the parties affected. It is objected on the part of the defendant that the statute authorizing the return of money so paid is merely permissive. The cities are "authorized and empowered" to refund and these words are said to invest a discretion or option to be exercised or not as may be deemed advisable by the municipal authorities. To give effect to the statute, however, it is necessary to place a different construction on the language used. The intent is to be judged by the purpose of the statute and we think it cannot be supposed that the legislature intended to leave compliance with the provisions of the Act of 1917 optional. The right of the individual is involved; a lien was entered and payment thereof exacted by the city for double the amount which could have been lawfully charged against the property. If we concede that on the doctrine of voluntary payment an owner so paying was without redress, there can be no doubt of the power of the legislature to provide a remedy. There was a taking from the owner of that which the city could not legally have demanded, and there was propriety therefore in providing a method by which that injury could be rectified. The intention having been indicated then of providing a remedy in such circumstances, the language of the statute should be so construed as to give effect to it. There are numerous authorities which hold that statutes which are permissive or directory

merely are to be construed as mandatory where they concerned public interests or the rights of third persons. We held in Carbaugh v. Sanders, 13 Pa. Superior Ct. 361, that "a direction contained in a statute, though couched in merely permissive language, will not be construed as leaving compliance optional, where the good sense of the entire enactment requires its provisions to be deemed compulsory." In Mason et al. v. Ferson, 50 U. S. 258, it is held that whenever it is provided that a corporation or office "may" act in a certain way, or "it shall be lawful" for them to act in a certain way, it may be insisted on as a duty for them so to act if the matter is devolved on public officers, and relates to the public or third person, and the distinction is pointed out between such language as employed in laws and that found in contracts. A statute of the State of New York provided that it shall be lawful for the mayor, alderman and commonalty of the city to construct sewers, drains, etc.; the contention there was that the statute was directory merely, but the court held that the word "may" should have the significance of the word "shall" and that the inference deducible from the various cases on the subject is that where a public body or officer has been clothed by statute with authority to do an act which concerned the public interest or the rights of third persons, the execution of the power may be insisted on as a duty although the phraseology of the statute be permissive merely and not peremptory: The Mayor, etc., of the City of New York v. Furze, 3 Hill 612. By a statute of Minnesota the city council was "authorized and empowered" to order payment and to pay the amount of certain claims. The court considered the question whether the language of the act was directory or mandatory and adopted the rule expressed by Lord Penzance in Howard v. Bodington, 2 Prob. Div. 203, who said that it was necessary to look to the subject-matter, consider the importance of the provision and the relation of it to the general object to be secured by the act, and on a review of the cases it was

held that the language of the statute was mandatory: Bowen v. City of Minneapolis, 47 Minn. 115. An act of the legislature of New York "authorized and empowered" the board of supervisors to cause taxes illegally assessed and paid to the county to be repaid, it was held to be the duty of the supervisors to comply with the statute: 36 Howard Pr. 1. An Illinois statute authorized the board of supervisors of townships if deemed advisable to levy a special tax to be assessed and collected in the same manner and at the same time as other county taxes. The question arose whether this authority was permissible or mandatory and the court held the conclusion to be deduced from the authorities is that where power is given to public officers in the language of this act or in equivalent language, whenever the public interest or individual rights calls for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person, the law requires shall be done. The power is given not for their benefit, but for his. It is placed with the depository to meet the demands of right and to prevent a failure of justice. It is given as a remedy to those who are entitled to invoke its aid and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which is the test, is not to devolve a mere discretion, but to impose a positive and absolute duty: Supervisors v. U. S., 71 U. S. 435. In People v. The Board of Supervisors of Livingston County, 68 N. Y. 114, the court held that where public interest or private right requires that the thing shall be done then the word "may" is generally construed as "shall." The subject was considered in Commonwealth ex rel. v. The Select and Common Councils, 34 Pa. 496, and the conclusion reached that the words "shall have power" to levy a tax imposed a duty. "The Supreme Court of the United States similarly laid it down that what public officers are empowered to do for a third person, the law requires shall be done whenever the public interest or individual rights call for the exercise of

the power; since the latter is given not for their benefit, but for his, and is placed with the depositary to meet the demands of right, and prevent the failure of justice. In all such cases, the court observed, the intent of the legislature, which is the test, is, not to devolve a mere discretion, but to impose a positive and absolute duty": Endlich on the Interpretations of Statutes, section 310, quoted with approval in McMullen v. Commonwealth Title, Insurance and Trust Co., 261 Pa. 574. These authorities support the plaintiff's contention that the statute in question was intended to vest in one who had been charged with more than he was lawfully bound to pay for a municipal improvement, a right to a return of the amount so paid. The statute should be construed to impose a duty on the municipality to do that which theretofore it was not bound to do however just might be the demand. The city is not entitled to more than the law allows it for municipal improvements. The owner of property is bound to pay that which is lawfully chargeable. More than this should not be exacted, and if paid through mistake or inadvertence or misapprehension, justice requires that it be returned if the law provide a remedy. This the Act of 1917 undertakes to do, and in using a permissive phrase the intent should be inferred that the legislature meant to enjoin a duty. It would be an imputation on the intelligence of the legislative body to suppose its intention was to adopt any system of discretion or favoritism by the application of which money might be refunded to A and refused to B, or applied to property owners on one side of the street and denied to those on the other. The only reasonable interpretation is that it was intended to establish a method by which justice could be done.

It is suggested in the brief of the appellee that if the act have the effect claimed for it by the plaintiff, it is unconstitutional because the title gives no notice of the purpose of the legislation. The proposition is not discussed at length and we are not convinced that the ob-

jection is valid. It is an act authorizing the refunding of money by cities to property owners who have paid charges for which they were not liable and the legislation follows that description and is less comprehensive than the title.

It follows from the foregoing discussion that the learned trial judge reached an erroneous conclusion in entering judgment non obstante veredicto. The judgment is reversed and the record remitted to the court below with direction to enter judgment on the verdict.

DISSENTING OPINION BY LINN, J., (PORTER AND TREXLER, JJ., concurring) :

What does the statute mean? In terms, it authorizes and empowers cities to refund money paid in specified circumstances. In 1919 (P. L. 20) its provisions were extended to boroughs and incorporated towns.

While neither mandatory nor retroactive in words, the court holds that it is both, by supposing the legislature so intended. Whether statutes shall be deemed permissive or mandatory, regardless of phraseology, has been much discussed; some of the cases are considered in 25 R. C. L. pp. 766 to 772, in 36 Cyc. 1157, and in a note to Gallup v. Smith (59 Conn. 354) in 12 L. R. A. 353. It is frequently said that no universal rule of interpretation can be stated, specifying when an enactment mandatory in form shall be considered to be permissive only, or when a statute permissive in form shall be considered mandatory; but is agreed in the words of one of the opinions quoted by the court that "It is the duty of courts of justice to try to get at the real intention of the legislature by carefully attending to the whole scope of the statute to be considered" : (Lord Penzance in Howard v. Bodington, 2 Pro. Div. 203, 1877).

Applying that rule, it will first be observed that the statute deals with government; the State confers a power on a subordinate governmental agency; whether legislative action was necessary is immaterial in this dis-

cussion, for there is evidence that there was in fact doubt about it, as appears by the litigation in Rubinsky v. City of Pottsville, infra.   Being governmental in character, and for its exercise requiring the raising of money by municipal legislation, perhaps by loan, and, conceivably even, in circumstances where a municipality's borrowing capacity is exhausted or insufficient, it differs in scope and character from the statutes under discussion in the cases cited in the opinion of this court.

The opinion concedes, that to reverse the judgment, the words of the statute must be interpreted in a sense different from their ordinary meaning.   The court says, "to give effect to the statute, however, it is necessary to place a different construction on the language used.   The intent is to be judged by the purpose of the statute and we think it cannot be supposed that the legislature intended to leave compliance with the provisions of the act of 1917 optional."   The departure from the applicable rule of interpretation would seem to be in that speculation. Though one agree "the intent is to be judged by the purpose of the statute," the question still remains what was the purpose.   There is nothing in the statute itself indicating an intention other than that clearly expressed; nor does the court specify where it appears aliunde that the legislative intention was to make the statute mandatory and applicable to transactions long past and forgotten.

What was the situation prior to the enactment?   Long before 1917, in Peebles v. Pittsburgh, 101 Pa. 304 (1882), it was held that money paid to satisfy a lien for street improvements, could not be recovered back, even though at the time it was paid, the city solicitor agreed that if there was no legal liability to pay, the money could be recovered.   The claim had been filed pursuant to legislation enacted in 1870 and 1872, in part held unconstitutional in Seely v. Pittsburgh, 82 Pa. 360.   It is matter of legal history that the legislation there questioned provided for street improvements over a large area, and that

much money was paid to the city to satisfy liens filed to recover the cost of those improvements; the subject was therefore important, and, as the opinion in Peebles' case indicates, it received thorough consideration; the result of the decision was that no landowner, paying as Peebles had, could get his money back.

How did the statute affect that situation? This court now holds that the legislature in 1917 intended to furnish to Peebles and other parties who had made such payments many years before 1917, or even to one who went about and became assignee of such parties, with a right of action to recover back such payments; that, notwithstanding the financial condition of a city that long before had received such payments, it was nevertheless bound on demand to raise the money and make payment, —the only apparent restriction being that afforded by the period of limitations, on the theory that it began to run from the creation of this statutory right.

The power of the legislature to impose such mandatory obligation to repay is conceded, (see Kennedy v. Meyer, 259 Pa. 306, and cases there cited), but, considering the many governmental subdivisions in the Commonwealth affected by the legislation, with their widely varying financial conditions, it seems unlikely, without more precise and explicit language, that the legislature intended to subject them to the expense and trouble of defending suits to determine that liens which had been satisfied were lawfully ordained, and, if the suits were lost to add to existing financial burdens, the duty of raising additional money to pay. It would seem more rational to conclude that the legislative purpose was limited to removing all doubt about the power of a city to repay such sums; and especially so, since about the time the law was passed, the power to refund was doubted. This confusion was disclosed by Rubinsky v. Pottsville, 81 Pa. Superior Ct. 105. Unlawful paving assessments had been collected by the City of Pottsville. Desiring to refund, the city, in 1920, passed an ordinance (in its preamble refer-

ring to Pottsville v. Jones, 63 Pa. Superior Ct. 180, decided in 1916) authorizing and directing the city to refund that and similar assessments which had been paid. While there is no basis for the conjecture here, it may be that the decision in Pottsville v. Jones led to the passing of the statute under consideration. Notwithstanding the ordinance and the statute, payment was refused. Rubinsky then sued to recover back what he had paid, and joined with the city in a case-stated. The point for decision was whether the city had authority to repay, it being suggested that the Act of 1917 and the amendment of 1919 were unconstitutional as special and local legislation. The opinion of this court sustaining a judgment for the plaintiff, was written by Judge HENDERSON, who said: "The question is one of the authority of the city to do the thing proposed and that depends on the effectiveness of the legislation. The Act of 1919 confers such authority; it is immaterial that it was supposed when the ordinance was adopted that it was the Act of 1917 [which alone had been mentioned in a preamble in the ordinance] under which it was proceeding."

As it appears, then, that municipal officers in good faith doubted their authority to refund, despite the ordinance authorizing them to do so, is it not obvious that a rational purpose is attributed to the legislature by holding the statute to be permissive, to remove the doubt existing, as it did, among municipal officers at about the time of the legislation? It would seem to be more reasonable than attributing to the legislature an intention of conferring a right of action on parties who theretofore without limit of time, had paid such uncollectible claims.

The statute would seem to call for the application of the following well settled rules of interpretation: "The legislature must have intended to mean what it has plainly expressed, and consequently there is no room for construction. It is, therefore, only in the construction of statutes whose terms give rise to some ambiguity, or whose grammatical construction is doubtful, that courts

can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the law makers": Endlich on Interpretation of Statutes, p. 6. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. [Citing precedents.] Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion: Hamilton v. Rathbone, 175 U. S. 414, 421. There is no ambiguity in the terms of this act": Caminetti v. U. S., 242 U. S. 470, at 485. In Dame's App., 62 Pa. 417, 422, Judge SHARSWOOD said: "The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn." See also Com. v. Foundry Co., 203 Pa. 302, 305-7.

When the legislature in 1917 wished to pass a mandatory act requiring the payment for work and labor furnished in circumstances where there was no right to recover therefor, it used appropriate language; in the Act of April 20, 1917, P. L. 91, it provided "and such county is hereby authorized and directed to ascertain and pay for all work done and materials furnished......": Kennedy v. Meyer, 259 Pa. 306.

Moreover, it is significant that in another respect the form of the legislation seems against the interpretation adopted by the court. If the purpose had been to require cities to repay, it would seem that the legislature would have directly conferred a right of action upon the parties intended to be benefited (see, for example, acts like that of March 6, 1903, P. L. 18) exercisable on the refusal or

failure of a city to make the payment ordered, instead of leaving the right of action to be implied.

The Pennsylvania decisions cited in the opinion furnish no real support for the interpretation adopted. The first one, Com. ex rel. v. Councils of Pittsburgh, 34 Pa. 496, was a mandamus proceeding in the Supreme Court, brought to require the councils of Pittsburgh to assess and levy a tax to provide for the payment of interest on bonds issued by the city in payment of its subscription to the stock of a railroad company. While the statute authorizing the city to subscribe and take stock was permissive, having once taken it, the city was of course bound to pay its obligations incurred therefor, so that what was said by the court concerning the interpretation of statutes must be considered in that connection; having exercised the power, the city of course could not escape payment of its obligation by interposing legislative discretion. The next case, Carbaugh v. Sanders, 13 Pa. Superior Ct. 361, arose on a motion to quash an appeal from a judgment of a justice of the peace. The statute questioned was the Act of June 24, 1885, "relative to costs in suits before aldermen and justices of the peace, and the collection of the same," providing "that in all cases of appeal from the judgment of an alderman or justice of the peace, the said alderman or justice shall be entitled to demand and receive, from the appellant, the costs in the case, before the making and delivery of the transcripts for said appeal." Appellant paid all the costs except $4.26, which were the costs of certain witnesses for the plaintiff. In the common pleas, plaintiff moved to quash the appeal because defendant had not paid all the costs. The court held he had not perfected the appeal; that the "direction contained in a statute, though couched in merely permissive language, will not be construed as leaving compliance optional, where the good sense of the entire enactment requires its provisions to be deemed compulsory......" The third case is Wolfe v. Edgewood Borough, 58 Pa. Superior Ct. 38, in

which it appeared that in opening a street, the benefits assessed by the viewers equaled the damages awarded, whereupon plaintiff paid her assessment. Thereafter some of the parties affected appealed, and the damages awarded by the viewers were reduced. This left the borough in possession of the benefits paid in an amount exceeding the damages finally paid. The statute provided: "The total assessment for benefits shall not exceed the total damages awarded or agreed upon." It was held that the expressed legislative purpose was to limit the amount which might be collected as benefits to what was paid as damages, and that, accordingly, the borough was required by the statute to refund what it was prohibited from retaining. The last one, McMullin Guardian, v. Trust Co., 261 Pa. 574, held that the court had improperly exercised its discretion under the Act of April 13, 1868, P. L. 94, authorizing a representative of a nonresident lunatic to apply to the courts of this State for an order for the removal of property therefrom, and in that connection referred to the rule quoted. It would seem obvious that the statutory interpretations in those cases are not inconsistent with what is suggested as the proper interpretation of the Act of 1917.

As the court holds that the reversal of the judgment can be sustained only by interpreting the act as requiring cities to make such repayment with liability to suit for refusal, it has been considered immaterial for present purposes, whether the city intended the claim to be filed for paving the entire width of the street or for only half of it, or whether the city proposed to pay half the cost with the proceeds of a loan;. the single matter now for discussion being whether the interpretation of the statute adopted by the court results in what the legislature intended to accomplish.

It would also seem clear that the act is prospective in scope and not retroactive, but, in view of the difference of opinion already considered, it may be sufficient on this phase of the question merely to quote the rule thus stated

in Com. v. Bessemer Co., 207 Pa. 306: "'Nothing short of the most indubitable phraseology is to convince us that the legislature meant their enactment to have any other than a prospective operation': Dewart v. Purdy, 29 Pa. 113. 'There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature: Neff's App., 9 Harris 243; Fisher v. Farley, 11 Id. 501; Becker's App., 3 Casey 52. Lord Bacon expressed concisely the same rule: Neque enim placet Janus in legibus. Retrospective laws generally if not universally work injustice, and ought to be so construed only when the mandate of the legislature is imperative': Taylor v. Mitchell, 57 Pa. 209. 'Unless such intent is clearly manifest, it will not be presumed that the legislature intended any other than a prospective operation': Peoples' Fire Ins. Co. v. Hartshorne, 84 Pa. 453."

(NOTE.—The Superior Court of its own motion certified this case to the Supreme Court.)