## In re Tuberculosis Hospital.

*Hospital for tuberculosis—Acts of May 20, 1921, P. L. 944, and March 23, 1925, P. L. 65.*

1. The Act of March 23, 1925, P. L. 65, providing for the appointment of an advisory board for a tuberculosis hospital, is not unconstitutional as being in conflict with article iii, section 20, of the Constitution of Pennsylvania.

2. The 12th section of the Act of 1925, *supra*, validates prior proceedings held under the Act of 1921, submitting the question of the establishment of a hospital for tuberculosis to the people of Northampton County.

3. It is the duty of the court to appoint the advisory board under the 3rd section of the Act of 1925, *supra*.

Petition to appoint advisory board under section 3 of the Act of March 23, 1925, P. L. 65. C. P. Northampton Co.

*T. McKeen Chidsey*, for petitioners.

*Albert F. Kahn*, County Solicitor, for county commissioners, contra.

PER CURIAM, April 5, 1926.—A petition was presented to the court under the 3rd section of the Act of March 23, 1925, P. L. 65, asking the court to appoint an advisory board under the provisions of that section. It appeared that a petition had previously been presented to the county commissioners under the provisions of the Act of May 20, 1921, P. L. 944, as amended by the Act of April 3, 1923, P. L. 52, requesting the county commissioners "to submit to the voters of the county at the next general election *the question as to whether or not a hospital for tuberculosis shall be established in the County of Northampton.*" That municipal election was held on Nov. 6, 1923, and a majority of the electors of the county voted "Yes" to the following question:

"To vote in favor of increase of indebtedness make a cross ( ✕ ) in the space opposite the word 'Yes.' To vote against the increase of indebtedness make a cross ( ✕ ) in the space opposite the word 'No.'

"Shall the fixed indebtedness of the County of Northampton and State of Pennsylvania be increased from Three Million Seven Hundred YES Sixty Thousand Dollars ($3,760,000) to Three Million Nine Hundred——— Sixty Thousand Dollars ($3,960,000) for the purpose of establishing a County Hospital for the treatment of persons afflicted with tubercu- NO losis?"

Said question was printed at the foot of the ballot. After the election, the question arose as to the constitutionality of the Act of 1921, and nothing was done by the county commissioners. On Oct. 6, 1924, President Judge Bechtel, of Schuylkill County, upon a petition similar to the present one, asking for the appointment of trustees under the Act of 1921, refused to make the appointment, holding that the Acts of 1921 and 1923 were unconstitutional, as being in conflict with article III, section 20, of the Constitution. His opinion was submitted to us and has been carefully considered, and we think it is entirely sound. Subsequently the legislature passed the Act of 1925, which was enacted to remedy the evils of the Act of 1921, and which was also intended to validate all "proceedings, elections and erections under existing laws repealed by this act, and all indebtedness incurred in connection therewith." That Act of 1925, in its last provision, repealed the Act of 1921 and its amendment. The county commissioners filed an answer to the petition, in which they attack the validity of the election held on Nov. 6, 1923, for the reason that the question directed to be submitted to the electors by the Acts of 1921 and 1925 has never been submitted to them; that the Act of 1925 is unconstitutional, being in contravention of article III, section 20, of the Con-

stitution of Pennsylvania, and that section 12 of the Act of 1925 is not mandatory upon the court or upon the county commissioners, but, on the contrary, is permissive only, and confers upon the court and the commissioners a discretionary power which the county commissioners have thus far failed to exercise. The general rule is: "One who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so:" Gottschall *v.* Campbell, 234 Pa. 347. We should be particularly careful in having that rule in mind where the act under discussion is evidently an attempt to cure the defects of a prior act. Nevertheless, reading the two acts together, it plainly appears that the framers of the Act of 1925 were determined to go as far as they could in placing the management of the hospital in the hands of a body that was created by this court, and which was intended to exercise a strong hand in everything that was necessary to be done in connection with that management. The effort plainly is to create an advisory board in place of the board of trustees mentioned in the prior act, and to make that board practically in charge of the hospital, reserving, however, to the county commissioners the right to veto the action of the advisory board. Practically, the question is, does an act which makes it incumbent on the county commissioners to consult in all things with an independent body, and which allows that independent body to supervise the management and operation of the hospital, and which compels the county commissioners to pay for all supplies and materials necessary for the board to carry on its work, and which charges the county with all actual and necessary expense incurred by the court, conflict with the Constitution? It is contended that the 3rd, 4th, 6th, 7th and 10th sections of the act are in conflict with article III, section 20, of the Constitution. That section is as follows: "The general assembly shall not delegate to any special commission, private corporation or association any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." That section provides that there shall be no delegation to any special commission of any power . . . to supervise or interfere with any municipal improvement . . . or to perform any municipal function whatever. The sections in the act referred to provide that: "The board shall meet monthly and at such other times as it may be deemed necessary. The board shall visit and inspect and keep in close touch with the management and operation of said hospital, and shall from time to time make such recommendations and suggestions to the county commissioners for changes or improvements in said management and operation as may be deemed advisable. It shall also make an annual report to the county commissioners concerning the management and operation of said hospital. The county commissioners shall, at the expense of the county, provide a meeting-place for said board and furnish all supplies and materials necessary to carry on its work. The members of the board shall not receive any compensation for their services, but shall be allowed all actual and necessary expenses incurred in the discharge of their duties, which shall be paid by the county. If a majority of the electors voting upon such questions at such election shall be in favor of the establishment of the hospital, the county commissioners shall, after consultation with the advisory board, select a site for such hospital. . . . The county commissioners may, after consultation with the advisory board, employ a superintendent and such physicians, nurses and other employees as may be necessary to properly conduct and manage such hospital. . . . The county commissioners shall have power, after consulting with the advisory board, to make general rules and regulations for

In re Tuberculosis Hospital.

the management of the hospital. . . . The advisory board herein provided for shall, by December 31 of each year, furnish to the county commissioners and the county controller, if any, a schedule of expenses deemed necessary for the maintenance and operation of the hospital for the ensuing year, and the county commissioners shall, after considering the schedule submitted by the advisory board, annually make appropriations deemed by them sufficient to properly manage and operate said hospital." It is contended that the county commissioners cannot buy a site for the hospital without consulting with the advisory board; that if the advisory board would decline to meet with the county commissioners, although the county commissioners might favor the building of a hospital, the advisory board could block the whole enterprise by not attending a meeting; and, further, that if the hospital had been built and the commissioners desired to employ a superintendent and physicians and nurses that were unacceptable to the advisory board, the latter could block the entire operation of the hospital. It will be noticed that by the 2nd section of the act, and by the 5th section of the act, the county commissioners may acquire the site and may let the contracts for the building without consulting the advisory board at all. Whether those sections were inserted in the act to cover the reservation of section 13, that if any of the provisions of the act are declared unconstitutional, that shall not affect the constitutionality of the remainder of the act, we know not; but having the power to build the hospital without consultation with the advisory board, and having a complete veto on the advisory board, there can be no question but what the county commissioners could act themselves if the advisory board refused to consult with them. Under the act, the advisory board has absolutely no power to do anything except to spend money for "actual and necessary expenses incurred in the discharge of their duties;" and even as to that feature, the commissioners would be the judges, in the first instance at least, of what were "actual and necessary expenses;" and if the commissioners and the controller refused to approve of them, the advisory board would have a difficult task in collecting their expenses. Article III, section 20, of the Constitution has been before the Supreme Court in many cases. In Perkins et al. v. Philadelphia, 156 Pa. 554, the attempt was by the Act of May 24, 1893, P. L. 124, to abolish the commissioners of public buildings and to place all public buildings heretofore under the control of such commissioners under the absolute control of the Department of Public Works in cities of the first class. It was held that that act violated the above section of the Constitution. In Porter v. Shields, 200 Pa. 241, it was held that an act creating a commission for the construction of sidepaths along highways was the creation of a special commission to perform municipal functions, and was unconstitutional. In Moll v. Morrow, 253 Pa. 442, it was held: "The Act of June 27, 1913, P. L. 638, providing for the creation of a Bureau of Public Morals in the Department of Public Safety in cities of the second class, is unconstitutional, as delegating municipal functions to a special commission in violation of section 20, article III, of the Constitution of Pennsylvania." Those cases are totally unlike the present case. In them the attempt was made to confer power and action on commissions and boards. Here, the advisory board, while it is to be expected that they would be of assistance, yet, in the last analysis, they have no power whatever except that of advising. The purpose of this act is highly meritorious—the improvement of the public health. Many cases have been decided by the Supreme Court in which they hold that it is the duty of the court to sustain acts that, under the police power of the Commonwealth, affect the public health. No better case can be cited than Buffalo Branch, Mutual Film Corp.,

*v.* Breitinger, 250 Pa. 225, where the careful and elaborate opinion of President Judge Martin, of Philadelphia County, was adopted by the Supreme Court. That case sustained the constitutionality of the act creating the State Board of Censors of Motion Picture Films. See, also, Com. *v.* Puder, 261 Pa. 129, and Lansdowne Borough et al. *v.* Public Service Commission, 74 Pa. Superior Ct. 203, where it was held that the Public Service Company Law does not violate the above article. On page 215, Judge Keller said with reference to this matter as follows: "The Public Service Commission is not a special commission within the meaning of this section of the Constitution, and the commission has not the power or authority to usurp, and is not usurping, any municipal power or function, which is the thing forbidden." See, also, Carlisle Borough *v.* Public Service Commission, 81 Pa. Superior Ct. 475. These authorities clearly show that the provisions of this act with reference to the advisory board are constitutional. The next objection is that the question directed to be submitted to the voters by the Acts of 1921 and 1925 has never been legally submitted to them. The language of section 1 of each of these acts is substantially the same. The question submitted to the voters was in the exact language of the acts, but it included the further information that the county's debt would have to be increased to the extent of $200,000 for that purpose. That question submitted was not the case of two separate and distinct propositions. It necessarily followed that if a hospital was to be erected, it would cost money, and it certainly could do no harm to call the voters' attention to the fact that the county debt would have to be increased if they voted affirmatively on the proposition. They did that, and, in our judgment, there is nothing in the contention that the printed form on the ballot vitiated the election. However, we regard this question as of no importance at the present time. The Act of 1925, in its 12th section, validates "all proceedings heretofore had or instituted, all elections heretofore held, &c., . . . under the provisions of the Act approved May 20, 1921, . . . and its amendments and supplements, by any county or by any board of trustees in behalf of any county, are hereby ratified, confirmed, validated and made legal, and in any county where any such hospital has been or is now being erected, or where proceedings have been instituted under the provisions of said act, such proceedings and hospital may be completed, and the said hospital may thereafter be managed and operated in accordance with the provisions of this act." The legislature had a clear right to validate proceedings under the prior Act of 1921. The authorities are uniform to that effect. See Donley *v.* Pittsburgh, 147 Pa. 348; Devers *v.* York City, 150 Pa. 208; Melick *v.* Williamsport, 162 Pa. 408, and City of Chester *v.* Pennell, 169 Pa. 300. In Swartz *v.* Carlisle Borough, 237 Pa. 473, the syllabus is: "It is settled law in Pennsylvania that the legislature has the power to legislate retrospectively on all matters not penal nor in violation of contracts not expressly forbidden by the Constitution." In the body of the opinion the court cites many of the cases upon this subject, and we hold that the first election has been validated by the act. The last objection is that the 12th section, just quoted, is not mandatory to compel the court to appoint the board or the commissioners to proceed to buy the site and build a hospital. It will be perceived that the legislature validated everything that has been completed. They then made a new class, and they said that where proceedings have been instituted under the provisions of said act (1921), such proceedings and hospital *may be* completed and said hospital *may* thereafter be managed and operated in accordance with the provisions of this act. It is contended by the learned counsel for the petitioners that the word "may," as used above, must be construed to

### In re Tuberculosis Hospital.

be mandatory and must be read "shall." He cites Endlich on the Interpretation of Statutes, § 310, as follows: "Whenever the act is to be done for the benefit of others, the word 'may,' or any of its equivalents, simply confers a power or capacity to do the act. It is facultative, not permissive, and neither by its own connotations nor by force of any legal principle does it necessarily imply an option to abstain from doing the act. On the contrary, it is a legal, or rather a constitutional, principle that powers given to public functionaries or others for public purposes or the public benefit are always to be exercised when the occasion arises." He also cites Com. ex rel. Hamilton v. Select and Common Councils of Pittsburgh, 34 Pa. 496, where the court held on page 513: "In a statute, the word *may* means *must* or *shall* in cases where the public interest and rights are concerned, and where the public or third persons have a claim *de jure*, that power should be exercised." He also cites Supervisors v. United States, 4 Wallace, 435, where it was held, on page 436, that when a power or authority is given by statute to public officers in permissive language, so that they "may, if deemed advisable," do a certain act, such as levy a tax for a special purpose, "the language used will be regarded as peremptory. . . . If public interests or individual rights call for its exercise, it must be considered as peremptory. . . . What they are empowered to do for the public or a third person, the law requires shall be done." The same subject is discussed at great length in the late case of Investors Realty Co. v. Harrisburg, 82 Pa. Superior Ct. 26, where we have an elaborate opinion expressing the views of a majority of that court, and an equally elaborate one expressing the views of a minority of three members of the court. The case went to the Supreme Court and is reported in 281 Pa. 200. Reversing the Superior Court, the Supreme Court said: "The Court of Common Pleas, in its opinion, entirely ignored the Act of July 5, 1917, P. L. 682. . . . When the case reached the Superior Court, however, the statute became the storm-centre of controversy, and the majority decided that, although it was in form permissive, it was in legal effect mandatory, and, hence, plaintiff was entitled to recover. It is not our purpose to enter the lists on this interesting subject, since we are of opinion that plaintiff cannot recover, by virtue of the statute, no matter which of the two conflicting views is correct. . . . It follows that whatever view is taken of the meaning of the statute itself, plaintiff cannot recover under it; if it is permissive only, because the city has not authorized the refunding of the money; if it is mandatory, because this is not clearly expressed in the title." We think, however, that in the present case, after the voters of the county have declared their wish in the premises, and where the public interest calls for an exercise of action on the part of the court and on the part of the county commissioners for the public good, the 12th section of the Act of 1925 must be held to be mandatory.

And now, April 5, 1926, the prayer of the petitioners is granted and the following are appointed members of the advisory board of the tuberculosis hospital to be established in this county under the provisions of the Act of March 23, 1925: Dr. E. M. Green, for a term of five years; Dr. B. Rush Field, for a term of four years; Mrs. Elizabeth L. Meyers, for a term of three years; Robert Gerstell, for a term of two years; H. S. Snyder, for a term of one year.

NOTE.—The substance of the opinion of Judge Bechtel in In re the Acquiring of a Site for and Construction, Equipment and Management of a County Hospital for the Treatment of Persons Afflicted with Tuberculosis, under the Act of Assembly of Pennsylvania of May 20, 1921, P. L. 944, and its supplement, being Act No. 31, of April 3, 1923, the case referred to in the above opinion, was as follows:

In re Tuberculosis Hospital.

BECHTEL, P. J., Oct. 6, 1924.—A petition was filed in this court Feb. 14, 1924, setting forth, *inter alia*, that a majority vote was cast in the November election of 1922 by the citizens of Schuylkill County, under the Act approved May 20, 1921, P. L. 944, in favor of acquiring a site for the construction, equipment and management of a county hospital for the treatment of persons afflicted with tuberculosis. That section 2 of said act was amended by Act of April 3, 1923, P. L. 52. That said acts require the appointment of a board of trustees, consisting of five members, one of whom shall be a physician appointed by the Court of Common Pleas, for carrying out the purposes of said acts.

That no board of trustees has as yet been named to act in conjunction with the county commissioners and the county controller in proceeding to have plans and specifications made and to select the site for said hospital.

The petition prayed the court to make the appointment of the said board of five trustees in accordance with the terms of said acts. To this petition was filed an objection on behalf of the county commissioners, objecting to the appointment of trustees as aforesaid, for the reason that the Act of 1921, *supra*, and its amendment, the Act of 1923, *supra*, is unconstitutional, in that it offends against the provisions of article iii, section 20, of the Constitution, and article xiii, section 2, of the Constitution. The question, therefore, is, do these acts offend against the provisions of the Constitution and are they, therefore, unconstitutional?

In approaching consideration of this question, we feel that we cannot do better than quote from the language of the Supreme Court in Com. ex rel. Brown *v.* Cumbert et al., 256 Pa. 531. In discussing the constitutionality of the act authorizing the establishment and maintenance of schools for the care of certain female children in counties containing a population of not less than 750,000 and not more than 1,200,000 inhabitants, it is there said: "We approach the consideration of the question before us fully realizing that a decision adverse to the act will occasion deep regret, especially among those whose disinterested zeal on behalf of a dependent class has contributed largely to the passage of the act. This much we may be permitted to say, that, as citizens of the Commonwealth, they would have just cause for deeper regret should the court before which the question is brought for adjudication disregard plain and positive constitutional requirements in order that an act of assembly, because of its beneficial aim, might be sustained."

Counsel for the county contend that the 3rd, 4th, 5th and 7th sections of the Act of 1921 and the amended section of the Act of 1923 are unconstitutional. These sections are as follows:

"Section 3. Such hospital shall be managed by a board of trustees, consisting of five members, who shall be electors of the county, one of whom shall be a licensed physician. Such trustees shall be appointed by the Court of Common Pleas, one for a term of five years, one for a term of four years, one for a term of three years, one for a term of two years and one for a term of one year, or until their successors are appointed and have qualified. All appointments thereafter shall be for a full term of five years. All vacancies in the membership of the board shall be filled by the Court of Common Pleas, upon the petition of the remaining members of the board.

"The board of trustees may employ such physicians, nurses and other employees, as may be necessary to properly conduct such hospital, and shall fix their compensation, which shall be paid from the county treasury.

"The board of trustees shall make general rules and regulations for the management of the hospital, and are authorized, subject to the approval of the county commissioners, to undertake such co-ordinated activities as will promote the usefulness of the hospital in the prevention of tuberculosis. They shall serve without compensation, except that actual expenses in connection with their service shall be paid.

"Section 4. Every hospital established under this act shall be for the benefit of all of the inhabitants of such county afflicted with tuberculosis, and they shall be entitled to occupancy, nursing, care and attendance according to the rules and regulations prescribed by the board of trustees. The board of trustees may exclude from the use of the hospital any persons who wilfully violate any rules or regulations.

"Section 5. The board of trustees may collect, from patients admitted to the hospital or from persons legally responsible for their maintenance, reasonable compensation for the treatment of such patients. They may also give free treatment to such persons as are unable to pay.

"All moneys received for the treatment of patients or by gift shall be paid into the county treasury, and shall be used only for the maintenance of such hospital;

and the said county commissioners are hereby authorized and empowered to receive contributions, donations, property and trust funds for the erection and maintenance of tuberculosis hospitals provided for in this act.

"Section 7. The county commissioners shall levy an annual tax sufficient for the support of such hospital, which, when collected, shall be paid into the county treasury, and such moneys shall be paid from the county treasury by warrant of the county commissioners, after itemized vouchers have been furnished by the board of trustees."

Amended section of the Act of 1923 provides as follows:

"Section 2. If a majority of the voters, voting upon such questions at such election, shall be in favor of the establishment of the hospital, the county commissioners, county controller, where such office exists, and board of trustees, hereafter provided for, shall have plans and specifications prepared and shall select and (purchase) acquire a site for such hospital by purchase or condemnation, with the same power and with the like procedure as land is now acquired under existing laws by school districts, for school purposes, the county commissioners exercising the authority exercised by school directors for that purpose. Such plans and specifications and the location of such site shall be approved by the commissioner of health before the construction of any building is commenced.

"Upon the approval by the commissioner of health of the plans and specifications and the location of such hospital, the hospital shall be constructed and equipped under the direction and supervision of the board of trustees, the county commissioners, the county controller, where such office exists, and in the same manner as other county buildings are constructed and equipped."

The sections of the Constitution which it is claimed these acts violate are article iii, section 20, which provides: "The general assembly shall not delegate to any special commission, private corporation or association any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

And article xiii, section 2, which provides: "County officers shall be elected at the general elections, and shall hold their offices for the term of three years, beginning on the first Monday of January next after their election and until their successors shall be duly qualified. All vacancies not otherwise provided for shall be filled in such manner as may be permitted by law."

In approaching the consideration of the question of the constitutionality of these acts, it is well to bear in mind the general rules as laid down by our higher courts. It has been said that: "The legislature intended that the law on the subject-matter of the bill should be operative, and if it can be done, it is the duty of the court to reconcile the different parts of the law rather than to declare it void and frustrate the legislative intention. All the presumptions are in favor of the constitutionality, and nothing but a clear violation of the Constitution will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void:" Com. v. Moore, 2 Pa. Superior Ct. 162; Com. v. Crowl, 245 Pa. 554.

Again, it has been said: "One who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond a doubt that it is so:" Gottschall v. Campbell, 234 Pa. 347, 357.

Let us now consider the provisions of the acts in question.

Section 20, amended, provides that in the event of the favorable decision by the electors, the county commissioners, county controller and board of trustees shall have plans and specifications prepared and shall select and acquire a site for such hospital by purchase or condemnation. Such plans shall be approved by the commissioner of health, and upon such approval the hospital shall be constructed and equipped under the direction and supervision of the board of trustees, the county commissioners and the county controller in the same manner as other buildings are constructed and equipped. It must be borne in mind that the board of trustees consists of five members. It will thus be seen that by the addition of these five members to the commissioners and controller the act places it within the power of the board of trustees to overrule the board of commissioners and the county controller and select such site and direct such building as they may determine. The effect of this section is to lodge in the board of trustees this power which heretofore was possessed by the county commissioners and the county controller. They may acquire any site pleasing to themselves and direct such building as they may deem proper without regard to the expense placed upon the county.

In re Tuberculosis Hospital.

Section 3 provides that such hospitals shall be managed by the said board to be appointed by the Court of Common Pleas in the manner prescribed in the act, and provided that such board may employ such physicians, nurses and other employees as may be necessary to properly conduct such hospital, and shall fix their compensation, which shall be paid from the county treasury. It wil thus be seen that the existing municipal authorities do not participate at all in the management of the hospital, the employment of physicians or other employees, the number to be employed or the compensation which they shall receive. All of these charges are fixed by the board of trustees independently of the municipal authorities, and must be paid out of the county treasury.

Section 4 gives to the said board the right to make such rules and regulations as they may deem necessary and to exclude from the use of the hospital any persons who wilfully violate any of said rules or regulations.

Section 5 gives the board the authority to collect from patients admitted to the hospital or from persons legally responsible for their maintenance reasonable compensation for the treatment of such patients, and also permits them to give free treatment to such persons as are unable to pay. Inferentially, it will be seen that the board of trustees have the power to determine who shall pay, what amount shall be paid and who shall receive treatment free of charge.

Section 6 provides that the county commissioners may incur or increase the indebtedness of the county to an amount sufficient to pay the cost of purchasing a site, of constructing and equipping the hospital by the issue of bonds, and provides for the levying of a tax to an amount necessary to pay the interest and sinking charges of said bonds.

Section 7 provides: The county commissioners shall levy an annual tax for the support of such hospital, which shall be paid into the county treasury, and such moneys shall be paid from the county treasury by warrant on the county commissioners after itemized vouchers have been furnished by the board of trustees. It will be noted that the warrants are to be drawn after the itemized vouchers have been furnished. The act nowhere gives to the commissioners or the controller the power to disapprove any of those bills or refuse to pay the same, but makes it the duty of the county commissioners to pay after itemized bills have been furnished. There is nowhere any provision that an estimate shall be furnished to the municipal authorities of the probable expenses of the maintenance and operation of the hospital for the ensuing year to permit them either to ascertain the amount of money to be raised by taxation or to make an appropriation for said expenses. The municipal authorities, therefore, have no power to curb or regulate the expenses incident to the acquiring of the site, the construction of the hospital, the number of employees to be employed, the salaries which they are to be paid or the maintenance and operation of the hospital.

It is true that section 8 provides for an annual report to be made to the county commissioners and the State Department of Health, but there is nothing as to what shall be done with this annual report, and it will be noted that the report is made after the expenses have been incurred. Is this the creation of a special commission to perform a municipal function, or is it merely the performing of a municipal function through an additional agency? There can be no question that the County of Schuylkill is a municipal corporation: Com. ex rel. Dare v. Smith et al., 9 Dist. R. 350. In Perkins et al. v. Philadelphia, 156 Pa. 554, it is said: "The special commission which, by the General Assembly of 1870, was delegated to certain commissioners was, by the General Assembly of 1893, simply withdrawn from them and delegated to the head of the Department of Public Works, another commissioner. The fact is not material that the new commissioner was already by general law an officer of the city; the special and unusual power given him, to be exercised in a special manner with reference to one particular building, constituted the special commission delegated to him. The 1st section, then, which fulfills the promise of the title, creates a vacancy in the office of commissioner and fills it with the nominee of the General Assembly. The authority of the General Assembly of 1870, under the Constitution of 1838, to delegate such power to a special commission was clear; that of the General Assembly of 1893, under the Constitution of 1874, was peremptorily forbidden."

In Stratton v. Allegheny County, 245 Pa. 519, it is said: "The purpose of the said section (section 20, article iii) was to thereafter prohibit the legislature from naming a commission, composed of members who were in no way connected with the constituted authorities of municipalities, which was to perform some duty of a municipal character."

## In re Tuberculosis Hospital.

This question was fully considered in a case very similar to the one at bar, by the Supreme Court in Moll v. Morrow, 253 Pa. 442, where it was held that the Act of June 27, 1913, P. L. 638, providing for the creation of a Bureau of Public Morals in the Department of Public Safety in cities of the second class, was unconstitutional, as delegating municipal functions to a special commission in violation of section 20, article iii, of the Constitution of Pennsylvania. In considering the question, the court says: "This board of directors is not a bureau of public safety, and calling it so does not help matters. The directors have full power to direct the work of the bureau and have dominion over all 'sex relationship affecting public morals.' The detail of policemen and detectives from the regular force is subject to the approval of the director of the department, but he must obey the requisition and his only discretion is in approving the choice of individuals. The men are subject to the board of directors only. 'The disguise is so thin that it can scarcely be called one.' " See, also, Porter v. Shields, 200 Pa. 241.

Our attention has been called to Com. ex rel. v. Krebs, 11 Schuyl. Legal Rec. 371, where this court declare the act creating the water-works commission constitutional. An examination of that decision discloses the fact that the conclusion was reached for the reason that the water commission was simply exercising a municipal function heretofore vested in the municipality, and that it was erected and created and subject for its very existence to the municipality itself. This is also true of the case of Smith et al. v. Baker et al., 3 Dist. R. 626, 9 Montg. Co. Law Repr. 194, where the act establishing boards of health was declared constitutional. It is not true, however, of the case at bar. The board of trustees whose appointment is here petitioned for have the power to erect the hospital and control it absolutely without interference from any municipal authority whatever. Salaries may be fixed without limit; enormous expenses may be incurred and the only function of the board of county commissioners is to pay.

It seems to us very clear that this is the creation of a special commission which exercises a municipal function. It has full charge of the maintenance and operation of a municipal building. It has full charge of the expenditure of public money incident to such maintenance and operation, limited only by its own wishes. We are of opinion, therefore, that the act is in violation of the sections of the Constitution hereinbefore quoted, and we must, therefore, decline to make the appointment prayed for under its provisions. . . .

From Henry D. Maxwell, Easton, Pa.