## LINE REPAIRMAN INJURED BY APPROACHING CAR.

Court of Appeals for Richland County.

### THE MANSFIELD RAILWAY, LIGHT & POWER COMPANY v. JOHN E. BARR.

Decided, February Term, 1914.

*Master and Servant—Negligence—Duty of Electric Railway Management Toward Men Repairing Trolley Wires—Charge of Court—Excessive Verdict.*

1. Where a repairman is sent to adjust a trolley wire, it is the duty of the railway company in the exercise of ordinary care to make proper provision to protect him from injury from cars using the track over which the wire upon which he is at work is strung.

2. A motorman running a car upon such track under the direction of his conductor is not a fellow-servant of one engaged in repairing the trolley wires.

3. Where a repairman so engaged discovered a car bearing down upon him and in dangerous proximity, it is for the jury to say, under proper instructions from the court, whether or not he was guilty of contributory negligence in jumping from his perch, thereby sustaining the injuries of which he complains.

4. A verdict for personal injuries will not be set aside simply because it is excessive in the mind of the court, but only where the excess is so great as to shock sound judgment and a sense of fairness toward the defendant.

*McBride & Wolfe,* for plaintiff in error.
*W. S. Kerr,* contra.

BY THE COURT (VOORHEES, SHIELDS and POWELL, JJ.).

A verdict of $8,500 was awarded the defendant in error, as damages for personal injuries alleged to have been sustained by him as a result of the alleged negligence of the plaintiff in error, while he was in its employ as a repairman of its electric lines.

To state the cause of action more fully, the plaintiff in his petition filed in the court below alleged:

"That on the 9th day of October, 1909, and prior thereto he was employed by the defendant as a repairman on its lines in Mansfield, Ohio, and to do such other work and service in con-

nection with the maintenance and repair of its lines as might be assigned him by the defendant. In doing said work for the defendant he was required, when it became necessary, to go up on top of a repair car and from that position repair wires, switches, etc. On the said 9th day of October, 1909, there was a break in the wires of said defendant's lines on Spring Mill street of said city at or near the point where Mulberry street and Spring Mill street branch. In the usual and ordinary course of his duty he went to the break on a repair car, and went on top of said car, which was about twelve feet above the street, to repair said break and while so engaged and without any fault or negligence on his part the repair car, upon which he was standing in doing the work aforesaid, was run into by one of the defendant's cars from the Shelby line.

"That when he saw that the Shelby car was going to strike his car, he was standing on the top of a platform or box of sufficient elevation above the roof of the car to enable him to reach and do the work he was doing and being afraid that he would be thrown from the box or platform to the street by the collision of the cars he jumped from the platform or box to the roof of the car and by the shock of the collision he was thrown from the roof of the car to the brick street.

"That he struck on his feet on the brick street from a distance of about twelve feet and that both ankles were fractured; that the bones of his ankles have grown together where some of the fractures were, and that he is now unable to walk but with great difficulty and he is permanently disabled from doing manual labor. He suffered great pain and he is unable to walk without great pain and suffering in his ankles. He expended the sum of $100 for medical services in attempting to be cured.

"That the defendant by its servants negligently and recklessly run the said Shelby car onto and against the repair car on which he was working and thereby caused the injuries of which he complains; that the said Shelby car was under the charge of a conductor who had control of the movements of the same, and that a motorman was employed on said Shelby car who was under the control of the conductor, and that said conductor and motorman negligently and recklessly ran said Shelby car onto and against said repair car as alleged; and he avers that the officer or agent of the defendant who has the supervision and control of the movement of the cars on the defendant's lines, with knowledge that plaintiff was engaged in repairing the lines as alleged and that in doing so it was necessary that said repair car occupy the track, failed and neglected to notify or warn

the conductor on Shelby car of this fact, whereby the injury to plaintiff would have been prevented. He says the car on which he was working was in sight of the conductor and motorman of the Shelby car and that he could be seen far enough to stop the Shelby car if they had exercised reasonable care in the premises. The defendant is a corporation organized under the laws of Ohio, and as such operated a city and surburban railway in the city of Mansfield and to Shelby as alleged. Wherefore judgment is prayed for in the sum of $10,000."

By answer the defendant admits that the plaintiff on the 9th day of October, 1909, and prior thereto was employed by it as stated in said petition, that in doing said work for the defendant he was required and it became necessary to go up on the top of a repair car and from that position repair wires, switches, etc.; that on said 9th day of October there was a break in the wires of the defendant's wires on Spring Mill street; that he went to the break on a repair car, and went on top of said car to repair said break, but it denies all the other allegations in said petition.

For a second defense the defendant says "that the plaintiff's injuries, if any were received, were caused by his own fault and negligence directly contributing thereto in jumping from said car and in taking no precaution whatever for his own safety."

The reply is a general denial of the contributory negligence charged.

Upon the issues thus made by the pleadings, the cause was submitted to a jury resulting in a verdict for the plaintiff. A motion for a new trial was overruled and judgment was entered upon said verdict. A bill of exceptions was taken containing all the evidence offered upon the trial, including the charge of the trial court, and by a petition in error said cause was brought into this court for review.

There is little or no controversy between the parties hereto as to the facts leading up to the injury here complained of. The employment of the defendant in error by the plaintiff in error to repair the wires on its lines, and, if necessary, to make such repairs on the top of its repair cars, that in pursuance of

such employment he went on top of such car to repair a break in
the wires of the plaintiff in error at the time and place stated,
and while he was so at work an interurban car on the Shelby
line of the plaintiff in error, operated by a motorman in its
employ, collided with said repair car, is admitted; and while
it is not contended that the defendant in error was not injured
thereby, it is insisted by the plaintiff in error that whatever
injuries were sustained by the defendant in error were caused
by his own negligence and carelessness, and that therefore said
company is not liable in this action.

It is hardly necessary to remark that if the evidence fairly
shows the facts to be as claimed by the plaintiff in error, namely,
that the defendant in error's negligence directly contributed to
or was the proximate cause of his injury, or if it should appear
by the evidence that the concurrent negligence of both the de-
fendant in error and the plaintiff in error contributed to and
produced said injury, then the motion submitted for an in-
structed verdict should have been sustained and not overruled.

An examination into the facts of this case as disclosed by the
bill of exceptions tends to show that on the morning of the day
mentioned the defendant in error, then in the employ of said
company as lineman, seeing the break in the wires of said com-
pany at the place mentioned, and upon arriving at said com-
pany's office reported the same to the general manager of said
company, who personally directed him to repair said break with-
out delay. Acting under such directions he prepared to make
such repairs, and soon thereafter took out and employed the use
of the repair car of said company used for such purposes, follow-
ing what was known as the Shelby car of said company, operated
on and over the streets in the city of Mansfield, and between
Shelby and said city of Mansfield, to the place where the wires
of said company were out of repair, and where said repair car
stopped on said company's tracks, with its brakes set, to enable
the defendant in error, with a helper, to make such repairs.
It appears that said repair car was so constructed that it be-
came necessary to use a box on top of the platform of said car to
make said repairs, and that such a box was used by the defend-
ant in error for that purpose, and that while on said box at work

repairing said wires, with his back to the north, his attention was called by his helper to a Shelby interurban car approaching, when turning around and finding that said car was about to collide with said repair car, he jumped to get down and failing to get hold of anything he fell on the brick pavement and was injured, or quoting from the language of the witness "I turned right around, saw that it was right on to us, and I made a jump to get down and get hold of something and I went on off;" that said interurban car did there collide with said repair car, knocking the latter forward on the tracks of the company some considerable distance from the point of said collision.

It further appears that said report of the condition of said wires was so made to the manager of said company about 8:30 on the morning mentioned; that the Shelby car which the defendant in error followed with said repair car to Spring Mill street, where the wires were out of repair, left Mansfield for Shelby at 9 o'clock on said morning; that under the schedule time of said company a car from Shelby bound for Mansfield left Shelby at 9:05 on said morning; that such car would pass the car going from Mansfield to Shelby, if on schedule time, at Spring Mill, where it was the rule or custom to have telephonic communication between the officers or employees of such car and the Mansfield office of said company, and that a like rule or custom obtained with cars leaving Shelby for Mansfield. The foregoing facts as gleaned from the bill of exceptions have been stated with some degree of particularity that they may aid in the consideration of the issues raised by the pleadings therein.

It is fundamental that negligence as a ground of recovery is not to be presumed from the happening of an accident but must be proven. As was announced in the case of *Railway Company* v. *Marsh,* 63 O. S., 236:

"Negligence must be proved either by testimony directly establishing the fact, or by the proof of facts from which negligence will reasonably follow and be presumed. The jury can not be allowed to guess that there was negligence without some proof thereof, either direct or inferential."

The correctness of this proposition as one of law is not to be questioned. In the abstract it is applicable alike to all cases

triable by jury, namely, that the material and ultimate fact·upon which a recovery is sought must be proven. The importance of applying this salutary and essential principle of law is emphasized by the verdict in this case. The amount of the verdict, when considered with reference to the issues raised by the pleadings, renders it necessary that the whole record of the case should be thoroughly canvassed with the sole view of ascertaining whether such verdict is authorized by the evidence and the law. To this end we have read the entire bill of exceptions with not a little care with reference to the respective claims of counsel on either side.

It is charged in the petition that the company was negligent in running its Shelby interurban car against and colliding with the repair car on which the defendant in error was at work repairing said wires, which it is alleged was the proximate cause of his injury. The testimony as to whether the manager of the company who is in legal effect the master here, personally directed the defendant in error to repair said wires is somewhat in conflict, but we are inclined to hold that a fair construction of the testimony in this respect shows that such order was given. Having been ordered to go to the scene of the work to repair these wires with said repair car, and having gone and engaged upon said car as ordered, which was known to be peculiarly dangerous, with the knowledge on the part of the company that cars were scheduled soon thereafter to pass at the place where he was so engaged, including the said Shelby interurban car, was it not the duty of the plaintiff in error, in the exercise of ordinary care, to make proper provision for the safety of the defendant in error as would afford him protection from the dangers incident to the operation and movement of cars between Shelby and Mansfield and in Mansfield, to avoid collision with said repair car while he was engaged in said work of repairs? We think, it was, and we further think that this question, in terms, was properly submitted to the jury by the trial court in its charge. *Ry. Co.* v. *Murphy, Admr.,* 50 O. S., 135; *Ry. Co.* v. *Lavalley,* 36th O. S., 221; *N. Y. C. & St. L. Ry. Co.* v. *Ros, Admr.,* 19 C. C., 689.

It was contended on behalf of the plaintiff in error that the motorman in charge of the Shelby interurban car and the defendant in error were fellow-servants, and that therefore, if the injury to the defendant in error was the result of negligence, it was that of a fellow servant and not that of the plaintiff in error. Plaintiff in error testified that he was acquainted with the rules of the company in the operation of its cars between Shelby and Mansfield, and that before leaving Shelby the officers or employees of the car would "call in and get orders" from the Mansfield office, and the same practice was observed in passing Spring Mill. If this is true, knowledge of the time the car in question left Shelby was brought direct to the knowledge of the plaintiff in error, and although the motorman of such car may have been negligent in failing to see said repair car and in colliding with it, if the plaintiff in error then knew that said interurban car was on its way from Shelby to Mansfield, and then knew that the defendant in error was then engaged in the work of repairing said wires and took no steps to protect him from the danger of said car colliding with said repair car, and colliding with said repair car the defendant was thereby injured, then it would be a question for the jury to determine whether or not the plaintiff in error was not guilty of negligence, and if so, whether or not such negligence was the direct and proximate cause of the injury to the defendant in error. On this subject the court below charged the jury as follows:

"If you find that the manager of the company knew that the plaintiff in the discharge of his duties intended to make the alleged repairs on said trolley, and you further find that an ordinarily prudent person, under the circumstances and in the situation of the manager of the defendant company, would have reasonably apprehended from the character of the work and the time and place of its performance that the plaintiff would, in the performance of such work, under the circumstances, be placed in peril and danger by reason of the operation of the city and interurban cars upon the track at such point where plaintiff was working, then it would be the duty of the defendant to exercise ordinary care to obviate possible injury to plaintiff arising from the perils, if any, that might reasonably be apprehended in the operation of its cars at said place, while plaintiff was in the performance of his duties.

"If the defendant failed or omitted to exercise such care, then such failure or omission would constitute negligence on its part, and, if such negligence was the direct and proximate cause of injury to the plaintiff, or if the motorman of the car that collided with the work car was guilty of negligence as charged in the petition, and such negligence, if any, combined with the negligence of the defendant resulted in injury to the plaintiff, defendant would be liable, unless plaintiff, immediately prior to and at the time of the accident was guilty of negligence directly contributing to his own injury."

We think that the foregoing contains a fair and correct statement of the law applicable to the facts in this case.

While the defendant in error on entering the service of the company assumed the ordinary and natural risks incident to his employment, including those of his fellow-servants, he did not assume the negligence of the company. The motorman here was engaged in another branch and department of service and in a different service from that of the defendant in error. He was engaged in managing and operating an electric car under the control of a conductor, while the defendant in error was a general repairman with no one in authority over him. Their duties were entirely separate and distinct, and being engaged in different branches and departments of service, we are of the opinion that they were not fellow servants, so that while the motorman in charge of the Shelby interurban car may have been negligent, still under the facts as they appear here, the commingled negligence of the motorman with that of the company would be the negligence of the company and render it liable. *Carter* v. *McDermott*, 5th St. Railway Report, 72; *Railway Company* v. *Henderson*, 37th O. S., 549; *N. Y., C. & St. L. Ry. Co.* v. *Ros, Admr.*, 4 C.C. (N.S.), 284.

It is contended by the plaintiff in error that the conduct of the defendant in error in jumping from the repair car immediately before the collision showed such contributory negligence upon his part as to defeat his right to a recovery herein. This was a question for the jury, and upon this subject we are of the opinion that the court below properly instructed the jury. In the light of the uncontradicted testimony of the defendant in error that he suddenly found himself in a position of imminent danger

by the close approach of the Shelby interurban car to the repair car on which he was working, he was not to be held to a strict account as to the course of conduct pursued by him to avoid danger, and possibly save his life. *Penna. R. R. Co.* v. *Snyder,* 55 O. S., 342.

It is also contended by the plaintiff in error that the court below erred in its charge to the jury in not definitely defining the issues between the parties hereto. A reading of said charge shows that the pleadings were not only read to the jury but that the issues of fact as raised therein were later on during said court's charge to the jury called to the attention of the jury and special instructions pertaining thereto were given by said court, all of which we are of the opinion was entirely consistent with the rule laid down in the case of *The Baltimore & Ohio R. R. Co.* v. *Lockwood,* 72 O. S., 586.

It is further contended by the plaintiff in error that the court below erred in its instructions to the jury respecting the duty of the company in the matter of furnishing the defendant in error a safe place to work. On this subject said court charged the jury as follows:

"The relation between plaintiff and defendant was that of master and servant and by virtue of such relation while the plaintiff was in its employ, the defendant would owe to him the duty of exercising ordinary care to provide him a reasonably safe place for the performance of his services. Thus a master would be bound to take all such precautions for the protection of one in his employ as an ordinarily prudent person would take to protect a servant in his employ from danger, having due regard for the character of the work and the place of its performance."

This instruction we think is in harmony with the principle enunciated in the case of *Railway Company* v. *Frye,* 80 O. S., 289, and we therefore hold that the contention of the plaintiff in error in this respect is not sustained.

Errors are also claimed in the action of the court below in the admission and exclusion of certain evidence offered upon the trial including the examination of the ankles of the defendant in error by a physician in the presence of the jury, and the

advice given by a certain physician to the defendant in error to have his case treated by a certain Chicago specialist and his charges therefor, and alleged conversations with the defendant in error in respect to the cause of the accident, all of which we have looked into and we are of the opinion that while perhaps technical errors did intervene in the admission of testimony offered in the respects mentioned, we do not regard them as prejudicially affecting the interests of the plaintiff in error, and for this reason we hold that they, or either of them, do not constitute ground for reversible error.

The petition in error filed herein sets forth as one of the grounds of error assigned that the court below refused "to give the several charges asked for by the defendant in error." We have examined said petition in error with reference to this alleged assignment of error and find no such requests made.

It is urged that the verdict and judgment are against the weight of the evidence and contrary to law, and that the damages are so excessive as to appear to have been given under passion or prejudice. As before stated, we have read the entire bill of exceptions and have carefully considered such parts of it as relate to the more important features of this case, and in the light of the direction given to the defendant in error to do this repair work, the circumstances under which it was done, or undertaken to be done, the history of the facts known to or presumed to have been known by the company immediately preceding and at the time of the collision of the cars resulting in injury to the defendant in error, with the case fairly presented to the jury, under proper instructions, as a reviewing court we do not feel justified in disturbing the verdict of the jury upon the ground that the same is not sustained by the evidence, or that the same was clearly against the weight of the evidence and contrary to law.

As to the damages being excessive as if given under the influence of passion and prejudice, in the absence of a showing made that the jury were so influenced, the presumption would be otherwise. True the verdict given was for a substantial sum, but it was the province of the jury to fix upon the compensation

to be awarded the defendant in error, if any, under the facts in the case as shown by the evidence.

In *Fisher* v. *Patterson,* 14 th Ohio, 418-427, which was a suit for libel, Judge Read announcing the opinion of the court said:

"In cases where the damages are to be determined by the sound discretion of the jury, in view of all the evidence the court will not interfere to grant a new trial on the ground of excess, unless the damages are so outrageously gross as to convince the court that the jury must have acted from corruption, or bias or mistake, or some other improper influence, instead of a sound and enlightened judgment."

In *L. S. & M. S. R. R. Co.* v. *Louisa Schultz, Admrx.,* 19 Ohio Circuit Court, 639-647, which was a personal injury case, Judge Parker announcing the opinion of the court, quoting with approval Judge Hammond in *Smith* v. *Pittsburg & Western Ry. Co.,* said:

"A verdict should not be set aside simply because it is excessive in the mind of the court, but only when the excess is shocking to a sound judgment and a sense of fairness to the defendant. When there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury rather than the contrary."

In *Walker* v. *Railway Company,* 63 Barbour, 267, which was a personal injury case, the trial judge said:

"The defendant's counsel, however, contends that the recovery in the action was excessive. In this class of cases no precise rule exists, by which the extent of the recovery can be prescribed; for the compensation to be received is, to a great extent, to be awarded for pain and suffering which can not be accurately measured by amounts. * * * The law has, accordingly, in this class of cases, committed the determination of the amount of damages to be awarded to the experience and good sense of jurors. And where the verdict rendered by them, may reasonably be presumed to have resulted from an honest and intelligent exercise of judgment upon their part, the policy of the courts is and necessarily must be, not to interfere with their conclusion."

In the case before us the evidence showed the defendant in error to be thirty-seven years of age, in good health and receiv-

ing fair wages when injured. Upon the whole case we can not say that the compensation awarded by the jury is unreasonable or excessive and we therefore do not feel justified in disturbing said verdict. We are therefore of the opinion that the court of common pleas did not err in overruling the motion for a new trial, and the judgment of said court will therefore be affirmed with costs, but without penalty. Exception may be noted.