GEORGE *v.* THE CLEVELAND TRUST CO. ET AL.

*Guardians and trustees—Probate court—Application for trustee-ship of person adjudged insane by foreign court—Section 11014, General Code—Application by foreign guardian to possess ward's Ohio property—Section 11009, General Code—Control of property discretionary with court, in interests of ward—Foreign guardian's powers limited to those possessed by Ohio guardian.*

1. In hearing of application under Section 11014, General Code, for trusteeship of lunatic adjudged insane in foreign state, and application by foreign guardian under Section 11009 to possess property of lunatic in state, probate court has discretion, in view of Sections 10942, 10944, 10991 and 11020, in best interests of lunatic, to grant application for trusteeship and deny foreign guardian's application.

2. Under Section 11009, General Code, providing that properly qualified foreign guardian of lunatic "may possess" ward's property within state, power of foreign guardian is limited, in view of Section 10991, to similar power possessed by guardians appointed by state courts.

(Decided October 25, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. C. W. Collister, Mr. N. B. Madden, Mr. Dan B. Cull,* and *Mr. Jas. F. Walsh,* for plaintiff in error.

*Messrs. Sawyer, Cummings, Mook & Strong,* and *Mr. Wm. H. McLellan, Jr.,* for defendants in error.

LEVINE, P. J. Error proceedings are prosecuted to this court from the decision of the common pleas court, wherein the judgments of the probate court of this county were affirmed.

Two applications were filed in the probate court as follows: On November 16, 1923, the Cleveland Trust Company filed an application for letters of trusteeship over one Coit E. Beilstein, adjudged an insane person by the probate court of Suffolk county, Mass. On December 5, 1923, an application was filed by John T. George, the foreign guardian of Coit E. Beilstein, for authority to possess, manage, and dispose of the real and personal estate of Coit E. Beilstein, situated in the state of Ohio. Both applications were heard, beginning April 3, 1924, and concluding April 8, 1924.

The application of the Cleveland Trust Company for letters of trusteeship was made under Section 11014, General Code, which reads as follows:

"When a minor, idiot, lunatic or imbecile, residing out of this state, has real estate, goods, chattels, rights, credits, moneys, or effects in this state, the probate court of the county where such property or a part of it is situated, if it considers this necessary, may appoint a trustee of such minor, idiot, lunatic, or imbecile, to manage, collect, lease, and take care of his property."

The application of the foreign guardian was made under the provisions of Section 11009, General Code, which reads as follows:

"The foreign guardian, conservator, trustee, or

other person having power similar to those of guardians in this state, of a foreign idiot, imbecile, or lunatic, or an incompetent by reason of advanced age or mental or physical disability or infirmity, appointed in any other state of the United States, or any territory thereof, may possess, manage, or dispose of the real and personal estate of his ward, situate in this state, in like manner and with like authority as guardians of idiots, imbeciles or lunatics, or an incompetent by reason of advanced age or mental or physical disability or infirmity appointed by the courts of this state, after complying with the following requirements:

"1. An authenticated copy of the foreign commission of idiocy or lunacy or incompetency proved, allowed, and recorded in the probate court of the county or one of the counties in which such estate is situated, in like manner as is provided by law for the admission to record of an authenticated copy of a will made in any other of the United States;

"2. Evidence satisfactory to the court here, before which such foreign commission is approved, that such idiocy or lunacy or incompetency still continues;

"3. The foreign guardian, conservator, trustee, or other person, having powers similar to those of guardians in this state, shall file his bond, with sureties, residing in this state or elsewhere, to the acceptance of the court, conditioned for the faithful administration of his guardianship."

There was a full compliance by the foreign guardian with the requirements of Section 11009, General Code. The probate court, while of the opinion

that there might be some question as to whether the lunacy or idiocy of the ward continued, yet found from the testimony of the alienists and the ward's conduct upon the witness stand that he was suffering from some mental alienation.

In view of argument of counsel and the briefs filed to support their respective arguments, it may be fairly assumed that there is but one question raised on the record, namely the construction of Sections 11009 and 11014, General Code. It may therefore be assumed that the court found that the foreign guardian fully complied with the requirements of Section 11009; that he furnished an authentic copy, required by law, which was allowed for record in the probate court; and that the lunacy of Coit E. Beilstein still continued.

The probate court upon full hearing denied the application of the foreign guardian for the right to possess or dispose of the real and personal estate of his ward situated in the state of Ohio, and granted the application of the Cleveland Trust Company for letters of trusteeship over Coit E. Beilstein. To quote from the opinion of Judge Hadden:

"I am forced to the conclusion, therefore, that it would not be to the best interests of the ward to grant the application of the foreign guardian. That application will therefore be dismissed."

After reviewing the facts which seemed controlling to the mind of Judge Hadden, the court found that it was not for the best interests of the ward to grant the application of the foreign guardian. The finding of the court was that it had discretion to grant the application of the Cleveland Trust

Company filed under Section 11014, and to dismiss the application of the foreign guardian under Section 11009.

It is contended by plaintiff in error that when a foreign guardian complies with the requirements of Section 11009 the probate court is without discretion, but is required by law to grant the application. In support of this contention we are cited to the case of *McMullin, Guardian,* v. *Commonwealth Title Insurance & Trust Co.,* 261 Pa., 574, 104 A., 760, and *Langmuir* v. *Landes,* 113 Ill. App., 134, in which the court held as follows:

"We simply remark, without further comment, that the learned court was here under misapprehension as to its proper functions in this particular case; the lunatic here was not its ward.   *   *   * He was the ward of a court in another state  *  *  *. Were we to admit the very question in dispute— the discretionary power of the court—that discretion must be confined to a consideration of those facts and circumstances which appertain and belong to the subject over which the court has jurisdiction, and not be allowed to extend to those of a foreign jurisdiction. But we see nothing in the act to justify even such qualified admission; indeed, any admission of this character, however limited, would not only be without warrant, but against rule and precedent as well." *McMullin, Guardian,* v. *Commonwealth Title Insurance & Trust Co., supra.*

"It might be said that the court having jurisdiction of the person and estate of Gerber in the province of Ontario, manifestly is in a better position to ascertain and determine his best interests

and to conserve the same, than the county court of Tazewell county." *Langmuir* v. *Landes, supra.*

Defendant in error relies in the main upon the case of *Banning, Ex'r.,* v. *Gotshall, Adm'r.,* 62 Ohio St., 210, the third paragraph of the syllabus (56 N. E., 1030) of which reads:

"Compliance by a foreign guardian with the provisions of Section 6279 of the Revised Statutes [Section 10944, General Code], is necessary to entitle him to demand or receive money belonging to his ward in the hands of an executor or administrator in this state; and the probate court may, in its discretion, refuse to make an order for the payment of the money to the guardian if satisfied it will be detrimental to the interest of the ward. Payment without such order is unauthorized, and affords no protection to the persons making the payment."

In the opinion, on page 228 (56 N. E., 1032), the court said: "In Story on Conflict of Laws, Section 504a, the rule is stated to be, that, 'no foreign guardian can *virtute officii* exercise any rights, powers, or functions, over the movable property of his ward situated in a different state or country from that in which he obtained his letters of guardianship.' And since whatever privileges are accorded such guardian in that respect in another state or country are conferred merely as a matter of comity, it necessarily follows that their existence and enjoyment may be made subject to such regulations and conditions as the state or country in which the property is situated may deem it just and proper to impose. In the absence of any statute on the subject it seems to have been usual

and necessary to resort to ancillary guardianship in the state where the property was situated, or make application to a court having chancery powers for a proper order authorizing the foreign guardian to exercise control over the personal estate of the ward so situated, or remove it from the state; and in such cases the courts have the discretionary power to make such order as should be deemed for the best interest of the ward."

Counsel for plaintiff in error, while recognizing the force of the syllabus in *Banning* v. *Gotshall, supra,* seek to distinguish the same from the case at bar, in that the syllabus refers to a foreign guardian of minors.

Section 10944, General Code, provides that: "In any case in which a guardian not appointed in this state, and his ward are both nonresidents of the state, and the ward is entitled to money or other property in the lawful custody of an executor, administrator, or other person in this state, by order of the probate court of the proper county, upon filing therein the proofs named in sections ten thousand nine hundred and forty-one and ten thousand nine hundred and forty-two, and giving notice to such custodian as therein prescribed, such guardian may be permitted to demand, receive, or recover, by suit, such money or other property, and remove it, unless the terms of limitation attending the right by which the ward owns it conflict with such removal."

The second of the preceding sections above referred to is Section 10942, General Code, which provides, among other things: "In any case, the court may deny the application unless satisfied

that the removal of the guardian appointed in this state would be to the interest of the ward."

It is conceded by plaintiff in error that in the absence of any statute on the subject it is necessary for a foreign guardian to make application to a court having chancery powers for a proper order authorizing the foreign guardian to exercise control over the personal estate of the ward so situated, or remove it from the state, and that in such cases the courts have the discretionary power to make such order as should be deemed for the best interest of the ward. *Banning* v. *Gotshall, supra.*

It is urged by counsel for plaintiff in error that, when the Legislature enacted Section 11009, General Code, it acted in the spirit of comity, to relieve the estate of the ward from the expense of two guardians, and to provide a simple procedure at law instead of one in equity, thus to enable the foreign guardian of a foreign insane person readily to possess and manage the estate of his insane ward, and it is assumed that the probate court, or other court of similar jurisdiction in the state where both the foreign insane person and the foreign guardian have their legal residence, would be as capable to determine and conserve the best interests of its own insane wards as any of the probate courts of this state; that therefore it omitted the language that is found in the statute relating to the foreign guardians of minors who have removed or have been removed from Ohio.

The phrase "may possess," as found in Section 11009, General Code, in the opinion of counsel for plaintiff in error, does not limit or qualify any

power of the court, or have any reference at all to the court or its action, but refers entirely to the guardian, and in the sense in which it is used means "to have power," "to be able." See Webster's New International Dictionary under the word "may." The statute, therefore, intends that, when the requirements of Section 11009 have been satisfied, the guardian has power to possess the property of the ward without interference of the court.

Commenting on the provisions of Section 11014, under which the application of the Cleveland Trust Company was granted, counsel for plaintiff in error continue: "Do the provisions of Section 11014 take away or destroy that power? The important and qualifying words of Section 11014 are: 'If it [the court] considers this necessary.' The court might consider a necessity existed, if there was no foreign guardian, or if a foreign guardian failed or refused for any reason to act. But when the foreign guardian proceeds under Section 11009, and is clothed with the powers of that statute, then there can be no necessity for, the court to consider it."

The entire discussion, therefore, resolves itself to a single question, whether under Section 11009, General Code, the probate court is vested with discretion to deny the application of the foreign guardian, if he deems it to the best interest of the ward to so deny it.

It will be noted that the provisions of the section contain the following language: "May possess, manage, or dispose of the real and personal estate of his ward, situate in this state, in like manner and with like authority as guardians of idiots, im-

beciles or lunatics, or an incompetent by reason of advanced age or mental or physical disability or infirmity appointed by the courts of this state.''

The most that can be claimed is that once a foreign guardian complies with the requirements of Section 11009, General Code, he becomes clothed with the same powers as are given to guardians of idiots, imbeciles, or lunatics appointed by the courts of this state. In other words, the power of the foreign guardian to possess, manage, or dispose of the real or personal estate of his ward is limited to similar power possessed by guardians appointed by the courts of this state.

In this connection the court examined the provisions of Section 10991, General Code, quoting the first part of the section: ''Laws relating to guardians for minors and their wards, and pointing out the duties, rights, and liabilities of such guardians and their sureties, shall be applicable to guardians for idiots, imbeciles, lunatics and incompetents by reason of advanced age or mental or physical disability or infirmity, and their children, except as otherwise specially provided.''

Were it not for the phrase, ''except as otherwise specially provided,'' it would be clear that the provisions of the Code relating to guardians, minors, and their wards are fully as applicable to guardians of idiots, etc. The contention of plaintiff in error is that the case of the foreign guardian is specially provided for, and that there is a distinction between foreign guardians for minors and foreign guardians for lunatics; but, as we have pointed out, this special provision for foreign guardians limits in express language the power

of the foreign guardian to possess, manage, or dispose of the real and personal property of his ward to like authority of guardians of such wards appointed by the courts of this state. There is no special provision putting guardians of lunatics, etc., appointed by courts of this state, upon a different footing than guardians for minors. It is clear, therefore, that laws relating to minors and their wards are fully applicable by force of Section 10991 to domestic guardians for imbeciles, idiots, lunatics, etc. Whatever limits are imposed by law upon domestic guardians must of necessity be imposed upon foreign guardians of lunatics, for the power of a foreign guardian of lunatics, etc., must be measured by the authority possessed by domestic guardians of such idiots, imbeciles, etc.

The distinction sought to be established between foreign guardians of minors and foreign guardians of imbeciles, etc., is not tenable. Section 10991 does not say laws relating to domestic guardians for minors and their wards shall be applicable to domestic guardians for minors and their wards. Instead the language used is: "Laws relating to guardians for minors and their wards including foreign as well as domestic guardians."

Likewise the provision of Section 10991 "shall be applicable to guardians, for idiots, imbeciles, lunatics and incompetents," does not say "shall be applicable to domestic guardians of idiots, imbeciles," etc. The language used includes all guardians, foreign as well as domestic. The conceded discretion, therefore, which under *Banning* v. *Gotshall, supra,* the probate court has to consider the welfare of the ward, when application

is made by a foreign guardian for minors, seems clearly to extend to all guardians, including foreign guardians for imbeciles, idiots, lunatics, etc.

An examination of Section 11020, General Code, proves enlightening. It reads: ''When a foreign guardian, administrator, or other legal representative of such minor, idiot, lunatic, or imbecile, applies to have all or any of the moneys or property in the hands of such trustee paid or delivered to him, he must file his petition, or motion, to that effect, in the court by which such trustee was appointed, giving such trustee thirty days notice of the time of hearing thereon, and also produce an exemplification from under the seal of the office, if there be a seal, of the proper court of the state of his residence, containing all the entries on record in relation to his appointment and qualification, authenticated as required by the act of congress in such cases. Upon the hearing thereof, the court shall make such order, as, under the circumstances, it deems for the best interests of such minor, idiot, lunatic or imbecile, or his estate.''

It must be conceded that if the court had already appointed a trustee to take charge of the property of a foreign lunatic situated in this state, the guardian would be bound to proceed under the above section, and that the court would then be vested with discretion to consider the best interests of the minor, idiot, lunatic, or imbecile; that the mere formal compliance with all the requirements imposed upon a foreign guardian would not deprive the court of such discretion. We can see no logical distinction between the case stated and the case at bar, where the foreign guardian made his

application while the application of the Cleveland Trust Company for letters of trusteeship was pending.

We hold that in either event the probate court is vested with discretion to consider the best interests of the ward. It follows, therefore, that the judgment of the common pleas court, affirming the probate court, is correct, and it will therefore be affirmed.

*Judgment affirmed.*

SULLIVAN and VICKERY, JJ., concur.