**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-2395 and 21-2439
_____

ZENAIDA GONZALEZ, Administratrix Ad Prosequendum of the Estate of ALISON
CHAVEZ, and ZENAIDA GONZALEZ, Individually,
Appellant in 21-2439
v.

STATE OF NEW JERSEY (DEPARTMENT OF CHILDREN AND FAMILIES;
DIVISION OF CHILD PROTECTION AND PERMANENCY) f/k/a DIVISION OF
YOUTH AND FAMILY SERVICES (DYFS), ALLISON BLAKE, ANDREA MOODY;
LUISA CORDERO, OLGA HUYNH, BRIGID EGWU-ONYEMA, DAVID
HENNINGSEN, KEAN UNIVERSITY, CHILD ADVOCACY RESOURCES
ASSOCIATION, (C.A.R.A.S); VICTORIA CERDA, MONICA AVILA, HAIZEL
LAZALA-KROHN, LUCRECIA VEGA, JOHN DOES 1-20 (fictitious), and ABC CORP
1-20 (fictitious)
Defendants

STATE OF NEW JERSEY (DEPARTMENT OF CHILDREN AND FAMILIES;
DIVISION OF CHILD PROTECTION AND PERMANENCY) f/k/a DIVISION OF
YOUTH AND FAMILY SERVICES (DYFS), ALLISON BLAKE, ANDREA MOODY,
LUISA CORDERO, OLGA HUYNH, BRIGID EGWU-ONYEMA, DAVID
HENNINGSEN,
Third-Party Plaintiffs

DR. ANITA KISHEN, M.D., F.A.A.P. and AL & JEANS CHILDREN FIRST AND
UNIQUE DAY CARE, INC.,
Third-Party Defendants

Andrea Moody; Luisa Cordero,
Appellants in 21-2395
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 2-14-cv-07932)

District Judge:  Honorable Kevin McNulty
_____

Argued March 21, 2023

Before:   JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges*

(Opinion Filed: June 8, 2023)

Justine M. Longa
Robert J. McGuire **[ARGUED]**
Office of the Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625
*Counsel for Appellants Andrea Moody Luisa Cordero in 21-2395, Appellee Brigid Egwu-Onyema in 21-2439*

Diego F. Navas **[ARGUED]**
481 Bloomfield Avenue
Newark, NJ 07107
*Counsel for Appellant Zenaida Gonzalez in 21-2439 and Appellee Olga Huynh in 21-2395*

Michael R. Sarno  **[ARGUED]**
Michael T. Moran
Thai L. Nguyen  **[ARGUED]**
Office of the Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625
*Counsel for Appellees Kean University, Child Advocacy Resource Association, Victoria Carda and Monica Avila*

McKEE, *Circuit Judge*.

   We are asked to review the District Court's denial of a motion for summary judgment in a suit under 42 U.S.C. § 1983 filed by Luisa Cordero, a caseworker with the Department of Children and Families Division of Child Protection and Permanency ("DCF") and her supervisor, Andrea Moody. The court rejected their assertion of qualified immunity from liability for the tragic death of Alison Chavez, a sixteen-month-old child who died due to head trauma while in foster care. The District Court granted the summary judgment motions filed by the other DCF defendants, and defendants associated with the Child Advocacy Resource Association ("CARAS"). Zenaida Gonzalez, Alison's mother, filed a cross-appeal, arguing that the District Court incorrectly granted summary judgment in favor of the remaining DCF and CARAS defendants. For the following reasons, we will affirm the District Court's denial of summary judgment as to Cordero and Moody and dismiss Gonzalez's cross-appeal for lack of jurisdiction.

                         I. [1]

   The events relevant to Cordero and Moody's liability took place between August 27, 2012—when Cordero placed Alison and her siblings into Haizel Lazala-Krohn and

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Under the collateral order doctrine, we have jurisdiction to review a denial of a summary judgment motion based on qualified immunity. See *Mitchell v. Forsyth*, 472

Lucrecia Vega's foster home—and October 10, 2012—when Alison's case was ordered to be reassigned to other caseworkers.

After placing Alison and her siblings in the foster home, Cordero's initial impressions were that Lazala-Krohn was "a little bit overwhelmed" caring for five children ages five and under.[2] Cordero reported this concern to her supervisor Moody, but by the second visit, believed Lazala-Krohn "was more in control."[3]

It is undisputed that Alison was injured in the foster home on September 27, 2012.[4] According to Lazala-Krohn, she left four children downstairs. After hearing a "boom," she went downstairs where she discovered Alison on the floor.[5] The children explained that Alison fell out of a chair and struck her head, which resulted in a bump on Alison's head. Despite that apparent injury, Lazala-Krohn did not take Alison to the hospital or seek medical help.[6] The following day, Friday, September 28, Lazala-Krohn

---

U.S. 511, 525–27 (1985); 28 U.S.C. § 1291. We exercise plenary review over the denial of a summary judgment motion. *Acierno v. Cloutier*, 40 F.3d 597, 609 (3d Cir. 1994). "We apply the same test required of the district court and view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Haybarger v. Lawrence County Adult Prob. & Parole,* 551 F.3d 193, 197 (3d Cir. 2008) (internal quotation marks and citation omitted). We may affirm the District Court on any ground supported by the record. *MRL Dev., LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 202 (3d Cir. 2016).

[2] App. 372, 353. Lazala-Krohn had expressed interest in fostering a maximum of four children but agreed to foster five children so that Alison and her siblings could remain together.

[3] App. 376.

[4] App. 10.

[5] App. 573.

[6] Lazala-Krohn did call Lucrecia Vega's sister Maria who has "some medical knowledge." App. 578. Concerned that Alison had a concussion, Maria told Lazala-Krohn to keep Alison awake.

left a message informing Cordero about the incident. When Cordero listened to that message on Monday October 1, she instructed Lazala-Krohn to make Alison an appointment with a pediatrician, and to let her know when that appointment had been scheduled.

On October 2, Alison's daycare called Cordero to inform her that Alison had a bump on her forehead and black eyes. Cordero immediately told her supervisor Moody, who responded, "let's go and take the baby to the doctor like right away."[7] Although the examining physician suggested that Alison should have been immediately brought to a physician, he concluded that Alison was healthy. Despite Lazala-Krohn's decision to leave Alison alone without supervision, and her failure to take Alison promptly to the pediatrician following this incident, Cordero and Moody did not remove Alison from the foster home.

During the period in which Cordero and Moody served as the caseworker and supervisor responsible for Alison's wellbeing, Alison's daycare documented other concerns. On September 17, the daycare noted two bruises to Alison's forehead. On September 25, 2012, the daycare stated that Alison's sister had come to daycare with a

---

[7] App. 387. Although the District Court made contradictory statements about whether Lazala-Krohn ever scheduled a doctor's appointment for Alison, *compare Gonzalez v. N.J. Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 195-96 (D.N.J. 2021) with *id.* at 206-07, the record shows that it took additional prodding from Cordero on the morning of October 2 before Lazala-Krohn "finally did make the appointment," *id.*, at 195-96.  And it wasn't until Alison's daycare called Cordero later in the day on October 2 that Cordero and Moody took matters into their own hands to get Alison to a doctor.

"busted lip" and Alison had a "rash/chaffing [sic] around [her] vagina and buttocks."[8] On October 10, 2012, the daycare documented another bruise on Alison's forehead.

Cordero testified she did not know about the September 17, September 25, or October 10 occurrences. However, the Division of Child Protection and Permanency ("DCPP") employees who transported Alison to and from the daycare recalled receiving incident reports from the daycare and testified that it was their practice to provide them to the caseworker who was responsible for putting them in Alison's casefile.[9]

## II.

"The doctrine of qualified immunity insulates government officials who are performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[10] To determine whether a government official is entitled to qualified immunity, we ask whether (1) the facts put forward by the plaintiff show a violation of a constitutional right and whether (2) the right was clearly established at the time of the alleged misconduct.[11] Where "issues of fact… preclude a definitive

---

[8] App. 410–412.

[9] During her deposition, Cordero was shown a contact sheet created by Shonda Emanuel, a transportation aide for DCPP, documenting the September 25 incident. She acknowledged that the contact sheet was "in the system. But [she] failed probably to read it." App. 446.

[10] *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[11] *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). Courts can exercise their discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

finding on the question of whether the plaintiff's rights have been violated, the court must nonetheless decide whether the right at issue was clearly established."[12]

The District Court correctly held that there exists a clearly established right for a foster child to be protected from a known substantial risk of serious harm. In *Nicini v. Morra*, we held that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."[13] The sufficiently culpable circumstances are those that "shock the conscience."[14]

Alone, *Nicini* does not demonstrate a clearly established right because the caseworker's behavior there did "not shock the conscience or demonstrate [] deliberate indifference to or reckless disregard of [the child's] constitutional rights."[15] However "a 'robust consensus of cases of persuasive authority in the Courts of Appeals'"[16] establishes the right of a child in foster care to be protected from a known substantial risk of serious harm.[17]

---

[12] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 n. 4 (3d Cir. 2015).
[13] *Nicini v. Morra*, 212 F.3d 798, 808 (3d Cir. 2000).
[14] *Id.* at 811. Relying on our sister courts, we applied a "deliberate indifference standard" to the foster care context. *Id.*
[15] *Nicini*, 212 F.3d at 812.
[16] *James v. N. J. State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)).
[17] *See, e.g., Doe v. N.Y. City Dep't of Soc. Servs.,* 649 F.2d 134, 141–42 (2d Cir. 1981) (recognizing that a state foster agency could be liable for deliberate indifference to a foster child's right to adequate agency supervision over the placement of a foster child); *Meador v. Cabinet for Hum. Resources,* 902 F.2d 474, 476 (6th Cir. 1990) (holding that "due process extends the right to be free from the infliction of unnecessary harm to

Although this right is clearly established, here, disputed issues of fact "preclude a definitive finding on the question of whether the plaintiff's rights have been violated."[18] It is undisputed that Cordero and Moody placed five children aged five and under in a foster home even though Lazala-Krohn (quite understandably) appeared overwhelmed. Cordero and Moody then failed to remove Alison from the home after the September 27 head injury. However, the record reflects a dispute as to whether Cordero knew—or should have known—about the September 17, September 25, or October 10 incidents documenting potential abuse. This dispute is material because it bears on whether Cordero and Moody knowingly disregarded a substantial risk of serious harm that

---

children in state-regulated foster homes"); *K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846, 852 (7th Cir. 1990) ("[T]he basic duty of the state to children in state custody [is] clear"); *Norfleet v. Ark. Dep't of Hum. Servs.,* 989 F.2d 289, 293 (8th Cir. 1993) ("[I]t was clearly established in 1991 that the state had an obligation to provide adequate medical care, protection and supervision [to foster children]"); *Yvonne L. v. N. M. Dep't of Hum. Servs.,* 959 F.2d 883, 892–93 (10th Cir. 1992) (foster children have a "clearly established right to protection while in foster care"); *Tamas v. Dep't of Soc. & Health Servs.,* 630 F.3d 833, 847 (9th Cir. 2010) ("[I]t was clearly established in 1996 that Appellees had a protected liberty interest in safe foster care placement once they became wards of the state"); *Smith v. District of Columbia*, 413 F.3d 86, 95 (D.C. Cir. 2005) (citing approvingly *Doe*, 649 F.3d at 141-42 and *Nicini*, 212 F.3d at 808 for proposition that the state owes children in foster homes a constitutional duty of care); *Taylor v. Ledbetter*, 818 F.2d 791, 795-96 (11th Cir. 1987) (citing approvingly to *Doe* for same proposition); *Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (assuming such a duty).

[18] *Spady*, 800 F.3d at 637 n. 4.

"shocks the conscience."[19] Therefore, we will affirm the District Court's denial of defendants Cordero and Moody's motion for summary judgment.[20]

III.

We do not have jurisdiction to review Gonzalez's cross-appeal arguing that the District Court improperly granted summary judgment as to other defendants. Our jurisdiction extends only to review of final orders of the District Court.[21] Here, the District Court's order, dated June 25, 2021, was not a final order resolving all issues as to all parties because summary judgment was "granted in part and denied in part."[22]

---

[19] *Nicini*, 212 F.3d at 810–12.

[20] Cordero and Moody appealed their denial of qualified immunity on the grounds that the District Court defined the alleged right at too high a level of generality and failed "to identify prior case law that involves factual circumstances that are sufficiently similar to the case under consideration." Cordero and Moody's Br. at 12.

In concluding that the right to be free from "abuse or neglect in a foster home" was clearly established, the District Court paid particular attention to *Doe v. N.Y. City Dep't of Soc. Servs.*, 649 F.2d at 145, *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010), *Meador*, 902 F.2d at 475 (6th Cir. 1990). *Gonzalez*, 545 F. Supp. 3d at 211-13. The District Court correctly stated that—in each case—"state foster care workers received information which indicated that circumstance [sic] in a foster household posed a significant threat of abuse. . . [,] failed to act on the threat, and the child was thereafter abused by a member of the foster household." *Id*. at 213. To the extent Cordero was informed about the other incidents documented by the daycare, our sister courts have clearly established that a failure to respond to known threats of abuse is a constitutional violation.

[21] *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.,* 460 F.3d 470, 476 (3d Cir. 2006); *Carter v. City of Phila.,* 181 F.3d 339, 343 (3d Cir. 1999) ("an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291.").

[22] App. 4. Gonzalez asks this Court to exercise its discretion in favor of review under the doctrine of pendent appellate jurisdiction. Plaintiff's Reply Br. at 8. We reject this request as the District Court's decision granting summary judgment in part was not "inextricably intertwined with that court's decision to deny [Cordero and Moody's] qualified immunity motions, [nor is] review of the former decision. . . necessary to ensure meaningful review of the latter." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*

IV.

For the reasons described above, we therefore affirm the District Court's denial of summary judgment as to Cordero and Moody and dismiss Gonzalez's cross-appeal for lack of jurisdiction.

---

*Intermediates, S.A.S.,* 269 F.3d 187, 203 (3d Cir. 2001) (citing *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 50–51 (1995)).